**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMILIO ROMERO | : | |
| | : | |
| Appellant | : | No. 2387 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 3, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0001534-2017

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:               **FILED:  MARCH 29, 2021**

Appellant, Emilio Romero, appeals from the aggregate judgment of sentence of 5 years' to 12 years' incarceration followed by 3 years of probation, which was imposed after his jury trial conviction for Interception of a Wire or Oral Communication (Interception of Communication), Criminal Use of Communication Facility, Possession of an Intercept Device, Invasion of Privacy, Tampering with Physical Evidence, Possessing an Instrument of Crime, and Possession of a Controlled Substance.[1]  On appeal, Appellant challenges aspects of his sentence as well as the constitutionality of his classification as a Tier I sex offender under the Sex Offender Registration and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 5703, 7512, 5705, 7507.1(a)(1), 4910(1), 907 and 35 Pa.C.S. § 780-113(a)(16), respectively.

Notification Act (SORNA).[2] We vacate the order denying Appellant's post-sentence motion insofar as it rejected Appellant's challenge to the constitutionality of SORNA and remand for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed below. We affirm in all other respects.

The facts underlying this appeal are as follows. On June 22, 2017, Erika Jones (Complainant) called 9-1-1 and reported that on June 21, 2017 Appellant, her husband, raped her at gunpoint. N.T. 12/11/18 at 60, 102-108. Police arrived at the house and escorted Complainant to the hospital. Police arrested Appellant on June 24, 2017 and charged him with rape and related charges, and charges related to violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701 et seq. (Wiretap Act). Appellant proceeded to a jury trial on December 11, 2018.

Complainant testified that Appellant had been recording her surreptitiously in her separate bedroom and that she caught him two times. N.T. 12/11/18 at 83-92. Police executed a search warrant in the home Appellant and Complainant shared on June 22, 2017. Police recovered several recording devices, including a pen camera, a hidden camera disguised as a light fixture, a hidden camera disguised as an electrical socket, and Appellant's cellphone. *Id*. at 217-220. Detective Brian Webbe conducted a forensic analysis of Appellant's cellphone. N.T. 12/12/18 at 31. Det. Webbe testified that the forensic analysis revealed several internet searches from Appellant's laptop between June 5, 2017 to June 10, 2017 for "can I boil xanax," "Rohypnol for sale," "glade plug in hidden camera," "live feed spy camera,"

---

[2] SORNA, 42 Pa.C.S. §§ 9799.10-9799.42, classifies offenders and their offenses into three tiers. *Id*. § 9799.14.

and "teddy bear camera." *Id*. at 63-64. Additionally, Detective Webbe testified that he accessed and downloaded several videos from Appellant's phone. *Id*. at 64. Detective Webbe testified that the forensic analysis revealed videos of Appellant and Complainant engaging in sexual acts, videos of Complainant in her bedroom in various states of nudity, and videos and pictures of her in the bathroom, including videos of her on the toilet. N.T. 12/13/18 at 22-52. Detective Lucas Bray testified that the videos taken from Appellant's phone showed Complainant in her bedroom naked, in the bathroom, in the shower, naked in her bedroom with a viewpoint coming from under the bedroom door, on the toilet, and naked in the bathroom. *Id*. at 22-33.

On December 14, 2018, Appellant was found not guilty of rape and related charges and was found guilty of the above-mentioned charges. The trial court scheduled sentencing for February 26, 2019. The Commonwealth filed a continuance request to reschedule sentencing until after a sexually violent predator (SVP) evaluation occurred. Motion, 1/31/19. The trial court rescheduled sentencing to April 30, 2019. Prior to sentencing, Appellant filed three motions, a Motion to Arrest Judgment based on his conviction for Criminal Use of a Communication Facility, a motion challenging the constitutionality of SORNA, and a Motion for Dismissal based on an alleged violation of his right to a speedy sentencing pursuant to Pa.R.Crim.P. 704. Appellant's Motion to Arrest Judgment, 3/18/19; SORNA motion, 4/30/19; Rule 704 motion, 3/18/19. The trial court continued sentencing to May 3, 2019 because of the schedules of the attorneys. Order, 4/30/19.

On May 3, 2019, the trial court held a hearing on Appellant's pre-sentence motions. The trial court denied Appellant's motion regarding the unconstitutionality of SORNA without prejudice to re-raise the issue after

- 3 -

sentencing. Order 5/3/19. The trial court denied Appellant's motion regarding Rule 704 and Appellant's motion to arrest judgment. Order 5/3/19. The trial court proceeded to sentencing on May 3, 2019. The trial court sentenced Appellant to an aggregate sentence of 5 years' to 12 years' incarceration plus 3 years of probation, consisting of consecutive sentences of not less than 18 months' to 48 months' incarceration plus 3 years of probation on the charge of Interception of Communication, 18 months' to 48 months' incarceration for Criminal Use of Communication Facility, 12 months' to 24 months' incarceration for Possession of an Intercept Device, and 12 months' to 24 months' incarceration for Invasion of Privacy. The trial court also sentenced Appellant to concurrent sentences of 9 months' to 18 months' incarceration for Tampering with Physical Evidence, and 6 months' to 12 months' incarceration for Possession of a Controlled Substance. The trial court did not impose a separate sentence for Possessing an Instrument of Crime because it merged with other crimes. Appellant was instructed that he must register for 15 years as a Tier 1 sexual offender in accordance with SORNA based on his conviction for Invasion of Privacy.

On May 12, 2019, Appellant filed a post-sentence motion in which he argued that his sentence was excessive, the verdict was against the weight of the evidence, merger and that the 15-year registration period pursuant to SORNA was unconstitutional. Appellant's Post-Sentence Motion, 5/12/19. On May 31, 2019, an *en banc* panel of the Court of Common Pleas of Monroe County heard Appellant's SORNA challenge, along with similar claims of similarly situated defendants. The trial court held a hearing on Appellant's remaining claims in his post-sentence motion on May 31, 2019. On July 18, 2019, the *en banc* panel denied Appellant's SORNA challenge. Order, 7/19/19. On July 22, 2019, the trial court entered an order denying Appellant's

- 4 -

remaining post-sentence motion claims and reiterated that Appellant's SORNA motion was denied. Order, 7/22/19. On August 12, 2019, Appellant filed this timely direct appeal.[3]

Appellant presents the following issues for our review: (1) whether Appellant's convictions for Criminal Use of a Communications Facility and Invasion of Privacy were against the weight of the evidence and unsupported by sufficient evidence, (2) whether the trial court erred in denying Appellant's motion to dismiss for violation of Rule 704, (3) whether Appellant's convictions for Interception of Communications and Possession of a Device to Intercept Communications merge for sentencing, (4) whether the trial court imposed a manifestly excessive and unreasonable sentence, and (5) whether the 15-year registration requirement imposed by the trial court pursuant to SORNA is unconstitutional. Appellant's Brief at 4-5 (reworded and reordered for simplicity and ease of discussion).

**Sufficiency of the Evidence**

Appellant challenges the sufficiency of the evidence pertaining to the charge of Criminal Use of a Communication Facility. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Hutchison***, 164 A.3d 494, 497 (Pa. Super. 2017) (citation omitted). We must determine,

> whether viewing all the evidence admitted at trial in the light most
> favorable to the verdict winner, there is sufficient evidence to

---

[3] On August 13, 2019, the trial court filed its order directing Appellant to file a Pa.R.A.P. 1925(b) statement. On August 16, 2019, Appellant filed his timely Rule 1925(b) statement.

- 5 -

enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fortson***, 165 A.3d 10, 14–15 (Pa. Super. 2017) (citation and internal brackets omitted) (some formatting).  Additionally, "[t]he evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Hutchison***, 164 A.3d at 497 (citation omitted).

Appellant argues that he was charged with Criminal Use of a Communication Facility based on his cell phone recording of the sexual encounter between Appellant and Complainant on June 21, 2017 for which the rape charge was based.  Appellant argues that since he was acquitted of the underlying felony rape charge, his conviction for Criminal Use of a Communication Facility cannot stand.

The Crimes Code makes it an offense if a person

uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under . . . [t]he Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S. § 7512 (footnote omitted).

Appellant's assertion is wrong.  The Commonwealth, at the charging conference, stated that it was pursuing this charge based on "the phone . . . that the phone was used to commit a wiretap violation which would be a felony." N.T. 12/13/18 at 192.  Importantly, the jury was actually instructed,

[a] communication facility means a public or private instrumentality used or useful in the transmission of signs, signals, writings, images, sounds, data or intelligence of any nature transmitted in whole or in part including but not limited to telephone, wire, radio, photo electronic or photo optical systems or the mail. **In this case the Commonwealth has charged the defendant used his cell phone.**

The second element, the defendant intentionally, knowingly or recklessly used a communication facility to facilitate, that is to bring about, **the commission of the crime of interception of an oral communication** as I will define that crime for you in a few moments.

And then third, the crime of interception of an oral communication did in fact occur.

N.T. 12/14/18 at 64 (emphasis added).

There was ample evidence presented at trial that Appellant used his cellphone to record Complainant and commit Interception of Communications.

Interception of Communications provides,

a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication[.]

18 Pa.C.S. § 5703(1). The jury was charged that "the term oral communication . . . means words spoken by a person who possesses an expectation that what she says is both private and not subject to interception under circumstances that justify that expectation." N.T. 12/14/18 at 67.

Detective Bray testified to the following video, recorded on June 8, 2017,

Prosecution: Detective, from your investigation does that [person in the video] appear to be the victim [Complainant] in her bedroom?

Detective Bray: It is. These were recorded with [Appellant's] cellular phone.

Prosecution: With the defendant's phone; and I think Detective Webbe had testified that the IMG specifically was done with his phone?

Detective Bray: That's correct.

(whereupon the video was played)

Mr. Raynor: Your honor I think they get the idea [Complainant is] laying down on the bed with the headphones.

N.T. 12/13/18 at 23. Detective Bray testified that videos were taken with Appellant's phone of Complainant in her bedroom, bathroom, on the toilet and in the shower in various states of nudity on June 8, 2017, June 9, 2017, June 11, 2017, June 14, 2017, June 15, 2017, and June 21, 2017. *Id*. at 19-34. The videos included words and sounds from Complainant. *Id*. It is clear from the testimony of Detective Bray that the Commonwealth introduced ample evidence that Appellant used his cellphone in the commission of intercepting oral communication of Complainant in her bedroom and bathroom where she expected to be free from interception. The Commonwealth presented sufficient evidence to sustain the charge of Criminal Use of a Communication Facility.

Appellant challenges the sufficiency of the evidence for Invasion of Privacy, 18 Pa.C.S. § 7507.1. Appellant argues that the Commonwealth presented insufficient evidence to show that Complainant did not consent to

the videos and pictures taken by Appellant. The Invasion of Privacy statute provides as follows,

> (a) Offense defined.--Except as set forth in subsection (d), a person commits the offense of invasion of privacy if he, for the purpose of arousing or gratifying the sexual desire of any person, knowingly does any of the following:
>
> (1) Views, photographs, videotapes, electronically depicts, films or otherwise records another person without that person's knowledge and consent while that person is in a state of full or partial nudity and is in a place where that person would have a reasonable expectation of privacy.

18 Pa.C.S. § 7507.1. Appellant only challenges the consent element. Appellant argues that one video presented to the jury depicted Complainant confronting Appellant after having found a secret recorder in a pen. Appellant equates this discovery with Complainant giving consent to being recorded. This argument is belied by the record. Complainant testified that she

> came out of the shower. I was in my room. As I'm by my closet I see this long stick under my door. It looked like there was a camera attached to the end of it. . . . It freaked me out. I grabbed it. [Appellant] had it on the other side and I started to break it. And then I opened my door and I'm like what are you doin [*sic*]?
>
> . . .
>
> Prosecution: Okay. For filming that was under the door, do you know if that happened one time or more than one time?
>
> Complainant: I have no idea. I caught him that one time.

N.T. 12/11/18 at 83-84. Additionally, Complainant testified,

> [H]e came into the room with the pen. he tried to give my daughter a pen. . . . And I looked at the pen and there was

- 9 -

> a camera in the pen and I said what are you doing. And then he snatched the pen from me . . .
>
> Prosecution: And how did you know that the pen was a camera? What tipped you off about it?
>
> Complainant: It didn't look like a normal pen. . . . [A]nd because he was already filmin [*sic*] me under my door I was already suspicious that he was tryin [*sic*] to film me.

*Id*. at 91-92.

The evidence presented by the Commonwealth in the form of the above testimony of Complainant is sufficient to show that she did not know or consent to being recorded by Appellant in those situations. Complainant's testimony to her reaction upon discovering Appellant recording her evidences her lack of consent and knowledge. Appellant's argument as to consent lacks merit.

**Weight of the Evidence**

Appellant challenges the weight of the evidence for his conviction of Criminal Use of a Communication Facility. Appellant argues that the Commonwealth sought to establish Criminal Use of a Communication Facility through evidence that Appellant's cellphone was used to videotape the alleged sexual assault encounter between him and Complainant. Appellant's Brief at 47. Appellant argues that since he was acquitted of the underlying rape charge, he could not be convicted of Criminal Use of a Communication Facility. *Id*.

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A trial court may sustain a weight challenge only if the verdict is

> so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. We defer to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

***Commonwealth v. Clemens***, 242 A.3d 659, 667 (Pa. Super. 2020) (internal citations and quotation marks omitted).

The trial court found that the verdict was not against the weight of the evidence. In its 1925(a) opinion, the trial court stated "the Commonwealth presented more than enough evidence to support all convictions." TCO at 25. It stated that "no individual conviction was against the weight of the evidence, that the overall verdict demonstrated that the jury did its job conscientiously, and that no individual conviction or aspect of the verdict shocks one's conscious or sense of justice." ***Id***. Appellant is incorrect that the basis of this charge was rape; the basis of the charge was use of his cellphone to commit Interception of Communications. The trial court did not abuse its discretion in its finding that the verdict was not against the weight of the evidence.

Appellant challenges the weight of the evidence for Invasion of Privacy. Appellant argues that the Commonwealth did not present evidence that Complainant did not consent to Appellant's surveillance of her. Appellant's Brief at 55. The trial court found that the verdict was not against the weight of the evidence, stating "the Commonwealth presented more than enough evidence to support all convictions." TCO at 25. This was not an abuse of discretion.

## Speedy Sentencing

Appellant argues that the trial court erred and abused its discretion in denying his Motion to Dismiss because he was sentenced over 90 days after his conviction, in violation of Pa.R.Crim.P. 704.

When reviewing a trial court's order disposing of a motion to dismiss pursuant to Pa.R.Crim.P. 704,

> we defer to the trial court's judgment on this issue of alleged undue delay and shall reverse only for an abuse of discretion. We have long held that mere errors in judgment do not amount to abuse of discretion; instead, we look for manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, a trial court abuses its discretion if the law is overridden or misapplied.
>
> . . .
>
> [O]ur scope of review is limited to the evidence on the record of the Rule 704 evidentiary hearing and the factual findings of the trial court. Also, we must view the facts found in the light most favorable to the prevailing party.

***Commonwealth v. Neysmith***, 192 A.3d 184, 192–93 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Rule 704 provides as follows,

> (A) Time for Sentencing.
>
> (1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or nolo contendere.
>
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 704. The comment to Rule 704 specifically recognizes that delays in sentencing may be caused by SVP evaluations.

> Paragraph (A)(2) . . . permits the judge to extend the time limit for sentencing under extraordinary circumstances only. For example, additional pre-sentence procedures may be required by statute. **See** 42 Pa.C.S. §§ 9799.11-9799.41 for pre-sentence assessment and hearing procedures for persons convicted of sexually violent offenses.

Pa.R.Crim.P. 704, comment.

With respect to the sanction for a violation of Rule 704, this Court has held,

> [t]he appropriate remedy for a violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than [ninety] days after conviction without good cause. Instead, a violation of the [ninety-day] rule is only the first step toward determining whether the remedy of discharge is appropriate.
>
> . . .
>
> [A] defendant who is sentenced in violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her. . . . [T]o determine whether discharge is appropriate, the trial court should consider: (1) the length of the delay falling outside of [the Pa.R.Crim.P. [90-day-and-good-cause provisions]; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; (4) any resulting prejudice to the interest protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Diaz*, 51 A.3d 884, 887 (Pa. Super. 2012) (internal citation omitted). Additionally, "Rule 704 [is not] aimed at addressing or eliminating clerical error. Protecting the accused from inexcusable or intentional delay on the part of the court or the Commonwealth, the 'whim' or power of the state, is the underpinning of the right to a speedy trial." *Id*. at 889 (citation omitted).

Appellant argues that the trial court postponed Appellant's sentencing hearing for a SVP examination pursuant to SORNA, and although delay for a psychological or psychiatric evaluation is permitted by the rules, this SVP evaluation is strictly prohibited as unconstitutional under *Commonwealth v. Butler* (*Butler I*), 173 A.3d 1212 (Pa. Super. 2017). Appellant's Brief at 43. Appellant argues that the delay was prejudicial because it was due to a violation of Appellant's constitutional right not to be subject to the SVP examination and Appellant lost his home to a Sheriff sale during the period of delay, which could have been avoided had he been sentenced promptly and fairly. *Id*. at 43.

The trial court stated,

> there's not even an inkling that there has been prejudice in this case. . . . I believe that a sexually violent predator assessment is a reasonable basis and a valid reason to go beyond the 90 days. . . . Mr. Romero's conviction occurred after the amendments to SORNA that at least ostensibly and by legislative statement were designed to address the *Butler* decision. . . . I believe that it is entirely proper for a sentencing court to order assessments and evaluations prior to sentencing and this is the type of report that I would want

- 14 -

to have regardless of whether it's held unconstitutional or not.

N.T. 5/3/19 at 16-17.

The trial court did not abuse its discretion in denying Appellant's motion to dismiss. Appellant's reliance on **Butler I** is misplaced. In **Commonwealth v. Butler** (**Butler II**), 226 A.3d 972 (Pa. 2020), the Pennsylvania Supreme Court held that registration, notice and counseling provisions for SVP's are not punitive since based on a finding of severe mental illness, not on criminal conduct. **Id**. The Pennsylvania Supreme Court found that the SVP hearings are not unconstitutional. **Id**. Appellant's challenge to the SVP evaluation is meritless.

Appellant's argument regarding prejudice that he faced likewise fails. Appellant was given credit for his time served and he fails to explain how a sentencing hearing held exactly 90 days after his conviction would have prevented the loss of his home. Pa.R.Crim.P. 704 protects Appellant against the "whim" of the state. **Diaz**, 51 A.3d at 889. The trial court did not abuse its discretion or override the law in continuing Appellant's sentencing hearing beyond the 90 days for the SVP evaluation to be conducted.

**Merger**

Appellant argues that his convictions for Interception of Communications and Possession of a Device to Intercept Communications merge for sentencing. Our standard of review is as follows.

> A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence.

Therefore, our standard of review is *de novo* and our scope of review is plenary. A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction.

***Commonwealth v. Leaner***, 202 A.3d 749, 784 (Pa. Super. 2019) (internal citation and quotation marks omitted).

Appellant argues that his convictions for Intercept Communications and Possession of a Device to Intercept Communications arose out of Appellant's use of a pen camera for the purpose of intercepting the oral communication of Complainant. Appellant's Brief at 46. Appellant argues that "[c]learly, all of the statutory elements of Interception of Communication are included in the offense of Possession of a Device for Intercept Communications, as the statutory elements of both crimes center around intercepting oral communications," and the offenses arise out of the same criminal act, Appellant employing his pen camera to subject Complainant to surveillance. ***Id***. at 44-46.

Section 9765 of the Judicial Code provides that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Our Supreme Court has held:

The best evidence of legislative intent is the words used by the General Assembly. Further, this Court must, whenever possible, give effect to all provisions of a statute and unless

- 16 -

> a phrase has a technical, peculiar, or otherwise defined meaning, that phrase must be construed according to its common and approved usage. Of course, this Court presumes that the General Assembly does not intend absurd or unreasonable results when it enacts a statute.
>
> . . .
>
> A plain language interpretation of § 9765 reveals the General Assembly's intent to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other.

**Commonwealth v. Calhoun**, 52 A.3d 281, 284 (Pa. Super. 2012) (internal citations omitted).

Even if the crimes arose from the same criminal act, the other requirement of merger must be met; "all of the statutory elements of one offense are included in the statutory elements of the other offense." See 42 Pa.C.S. § 9765. A reading of the plain language of the statutes reveals otherwise.

Possession of Device for Interception includes the elements: (1) intentionally possessing an electronic, mechanical or other device, and (2) knowing or having reason to know that the device renders it primarily useful for the purpose of the surreptitious interception of a wire, electronic or oral communication. 18 Pa.C.S. § 5705(1). Interception of Communications provides that a person must (1) intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept (2) any wire, electronic or oral communication. 18 Pa.C.S. § 5703(1).

The plain language of Interception of Communications shows that the person must actually intercept or try to intercept the communication in order to be convicted. Interception of Communication does not require Appellant to possess the device. 18 Pa.C.S. § 5703(1). A person need not actually intercept the communication in order to be convicted of Possession of an Interception Device. 18 Pa.C.S. § 5705(1). On the face of the statutes, there is no showing that "[a]ll of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765. The crimes do not merge. Appellant's sentence is not illegal.

**Discretionary Sentence Challenge**

Appellant argues that the sentencing court erred as a matter of law and abused its discretion when it imposed a manifestly excessive and unreasonable sentence.[4] Appellant's argument on appeal relates to the discretionary aspect of his sentence. *See Commonwealth v. Lee*, 876 A.2d 408, 411 (Pa. Super. 2005) (claim that trial court imposed an excessive sentence is a challenge to the discretionary aspects of a sentence). A defendant does not have an automatic right of appeal of the discretionary aspects of a sentence and instead must petition this Court for allowance of

---

[4] In it's Pa.R.A.P. 1925(a) opinion, the trial court found this issue waived because Appellant failed to provide the sentencing transcripts to the trial court. Trial Court Opinion at 21-23. *See* Pa.R.A.P. 1911. On January 27, 2020, Appellant filed a "Motion for Remand" with this Court in order to provide this Court with necessary transcripts. In a *per curiam* Order, this Court granted Appellant's request pursuant to Pa.R.A.P. 1926. The transcripts were subsequently provided to this Court on March 2, 2020. As such we will not find Appellant's issue waived for failure to provide transcripts.

appeal, which "may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under" the Sentencing Code. 42 Pa.C.S. § 9781(b); **see also Commonwealth v. Williams**, 198 A.3d 1181, 1186 (Pa. Super. 2018).

Prior to reaching the merits of a discretionary sentencing issue, we must engage in a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his [ ] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [pursuant to Pa.R.A.P. 2119(f) ]; and (4) whether the concise statement raises a substantial question that the sentence is [not] appropriate under the [S]entencing [C]ode.

**Williams**, 198 A.3d at 1186 (citation omitted).

Appellant satisfied the first three requirements. We must therefore determine whether Appellant's concise statement raises a substantial question that the sentence is not appropriate under the Sentencing Code.

> Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. . . . We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." [W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists.

***Commonwealth v. Radecki***, 180 A.3d 441, 467-68 (Pa. Super. 2018) (internal citations omitted). Appellant asserts in his Pa.R.A.P. 2119(f) statement,

> The trial court abused its discretion in imposing an unreasonable, manifestly excessive consecutive sentence of Twelve (12) to Thirty-Two (32) years, where the sentence was grossly disproportionate to the gravity of the offense, Appellant's rehabilitative needs, and the protection of the community, and was the product of ill will and bias, which warranted the grant of recusal, thereby violating 42 Pa.C.S.A. § 9712(b) of the sentencing code and the fundamental norms of sentencing.

Appellant's Brief at 32.

> The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, . . . and prohibiting a sentence of total confinement without consideration of the nature and circumstances of the crime[,] and the history, character, and condition of the defendant[.]

***Commonwealth v. Luketic***, 162 A.3d 1149, 1160-61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

This Court has found a substantial question exists where a sentencing court failed to consider a defendant's individualized circumstances in its imposition of sentence in violation of the Sentencing Code. ***See Commonwealth v. Ahmad***, 961 A.2d 884, 887 (Pa. Super. 2008).

> [A] defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges

- 20 -

if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) (emphasis in original and internal citations omitted); *See Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (averment that court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs" of the defendant raised a substantial question).

In the current action, we find that Appellant presents a substantial question by setting forth an argument that his consecutive sentence is contrary to the fundamental norm of the sentencing process that a defendant's sentence must be individualized, because the sentence was grossly disproportionate to the gravity of the offense, his rehabilitative needs and the protection of the community. *See* Appellant's Brief at 32; *Luketic*, 162 A.3d at 1160. We therefore consider the substantive merits of Appellant's sentencing claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Lekka*, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted).

Appellant argues that, given that he was acquitted of all sexually violent offenses, not deemed a sexually violent predator, has a steady history of employment, provided for his family, and expressed heartfelt remorse and accepted responsibility at sentencing, clearly neither his rehabilitative needs nor the protection of the complainant and the community required such a severe sentence. Appellant's Brief at 37-38. He argues that the trial court completely disregarded Appellant's potential for continued rehabilitation and the gravity of the offense as it impacted the victim and community. *Id*. at 35-36. Appellant argues that the minimum sentence of five years imposed by the court is five times greater than the low-end standard range sentence of one year. *Id*. at 37.

The trial court, in its 1925(a) opinion, stated that the individual and aggregate sentences are within the standard guideline range and are less than the Commonwealth requested. TCO 10/29/19 at 24. Further, the sentences were informed by a PSI report. *Id*. Moreover, at the time the judgments were announced, the trial court stated the reasons for the sentence imposed and identified the documents, information, and records that it considered. *Id*.

This Court has held,

> [w]here the sentencing judge had the benefit of a presentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors.

***Commonwealth v. Conte***, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted).

During sentencing, the trial court stated that it received and read the pre-sentence investigation report in this case, that it was aware of the sentencing laws, regulations and guidelines applicable to Appellant. N.T. 5/3/19 at 48. The trial court expressed that it was aware that Appellant had a prior record score of 5. ***Id***. at 46. The trial court stated that it considered the jury's decision, the verdict in this case, the evidence presented, the trial court file, statement from the victim, the sexual offender assessment board report, and the pre-sentence memorandum filed by Appellant. ***Id***. at 47-48. The trial court correctly informed Appellant of its discretion to determine whether to run a sentence concurrent or consecutive. ***Id***. at 49. The trial court heard testimony from a defense witness, Appellant's sister, before sentencing Appellant. ***Id***. at 24-25. Additionally, Appellant exercised his right to allocution and testified before sentencing. ***Id***. at 25-29.

The trial court acknowledged that Appellant had been acquitted of the sex offense crimes, and stated that "what is left over is very disturbing and . . . is the type of matter that not only affects the individual victim but affects others around and has an impact on the community and society as a whole." N.T. 5/3/19 at 49. The court expounded that it found particularly disturbing the acts involving the privacy of people in their own home and especially in their bedrooms. ***Id***. at 50. The trial court noted the danger in having the ability to disseminate the collected private information equally disturbing. ***Id***.

The trial court stated, "I need you to understand that my view of this is it's not simply one simple criminal act that even if we accepted what you said was true of which you were ignorant this is multiple criminal acts of invading someone's privacy and intercepting not only what you said was consensual but pretty clearly things that were not." N.T. 5/3/19 at 51. The trial court pointed out that it found particularly disturbing that Appellant put a camera under the door when the victim was using the bathroom. *Id*. The trial court concluded that there was substantial harm and substantial cost to this type of behavior. *Id*. at 51-52. The trial court indicated that it considered Appellant as an individual, including Appellant's "mental health or emotional or psychological needs and the defendant's rehabilitative prospects." *Id*. at 52. The trial court indicated that "when there is no non-criminal explanation for criminal behavior such as someone who does have a disease such as an addiction or someone who does have mental health issues that cause him or her to commit a crime; if someone doesn't have any of those things and still engages over the course of time in criminal behavior, that's problematic." *Id*. at 54.

After a thorough review of the record including, the briefs of the parties, the PSI, the applicable law, and the sentencing transcripts, we conclude Appellant's issue merits no relief. The trial court considered adequately Appellant's rehabilitative needs. The trial court also stated that the sentence was based on the gravity of the offenses, which it found particularly egregious and had affected not only Appellant's immediate family but the community.

Based on the foregoing, we will not disturb the trial court's discretion. *See Lekka*, 210 A.3d at 353; *Conte*, 198 A.3d at 1177.

## SORNA

In his remaining issue, Appellant argues that the 15-year registration requirement imposed by the trial court pursuant to SORNA[5] is unconstitutional. Appellant argues that SORNA's 15-year registration requirement violates the fundamental right to reputation under the Pennsylvania State Constitution as well as federal guarantees of procedural due process under the fifth, sixth and fourteenth amendments. Appellant's Brief at 58.

Appellant cites a Common Pleas court decision, *Commonwealth v. Torsilieri*, CP-51-CR-0001570-2016 (*Torsilieri I*), as grounds for invalidating his 15-year SORNA registration as unconstitutional. Appellant's Brief at 59. Appellant argues that the trial court in *Torsilieri I* found that SORNA is unconstitutional because it violates the fundamental right to reputation under the State Constitution, as well as federal guarantees of due

---

[5] 42 Pa.C.S. §§ 9799.10-9799.42. The General Assembly amended SORNA on February 18, 2018, by passing Act 10 of 2018, which was effective immediately. See P.L. 27, No. 10, §§ 1-20. "Act 10 split SORNA, which was previously designated in the Sentencing Code as Subchapter H, into two subchapters. Revised Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012." *Commonwealth v. Torsilieri*, 232 A.3d 567, 580 (Pa. 2020). In the current case, Appellant committed his crimes in 2017, therefore, Subchapter H applies.

process, therefore, the trial court should have done the same in his case. *Id*. at 59-60.

During the pendency of Appellant's appeal, the Pennsylvania Supreme Court decided ***Commonwealth v. Torsilieri***, 232 A.3d 567 (Pa. 2020) (***Torsilieri II***). In ***Torsilieri II***, the Court did not reach the merits of any of the constitutional claims at issue, determining instead that the factual record was not sufficiently developed in the trial court. The Pennsylvania Supreme Court concluded that a remand was appropriate "to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." ***Torsilieri II***, 232 A.3d at 585. Our Supreme Court continued:

> We recognize that the Commonwealth parties relied upon our recent statement in [***Commonwealth v.***] ***Muniz***, 164 A.3d [[1189,]at 1217 [(Pa. 2017) (plurality)], rejecting . . . expert evidence calling into question the legislature's assessment of sexual offender recidivism risks and the effectiveness of tier-based registration systems. In light of this reliance, we emphasize that all cases are evaluated on the record created in the individual case. Thus, a court need not ignore new scientific evidence merely because a litigant in a prior case provided less convincing evidence. Indeed, this Court will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights.
>
> Nevertheless, we also emphasize that it will be the rare situation where a court would reevaluate a legislative policy determination, which can only be justified in a case involving the infringement of constitutional rights and a consensus of scientific evidence undermining the legislative determination. We reiterate that while courts are empowered to enforce constitutional rights, they should remain mindful that the wisdom of a public policy is one for

> the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements. . . . Accordingly, we conclude that the proper remedy is to remand to the trial court to provide both parties an opportunity to develop arguments and present additional evidence and to allow the trial court to weigh that evidence in determining whether [the Commonwealth] has refuted the relevant legislative findings supporting the challenged registration and notification provisions of Revised Subchapter                                                                      H.

*Torsilieri II*, 232 A.3d at 595–96. Subsequent to *Torsilieri II*, in *Commonwealth v. Mickley*, 240 A.3d 957, 962 (Pa. Super. 2020), this Court remanded a similar SORNA challenge for an evidentiary hearing pursuant to *Torsilieri II*.

In the current action, no evidence was presented at the hearing on Appellant's post-sentence motion, despite discussion of such evidence existing in the form of scientific studies. N.T. 5/31/19, at 20-21, 26-27. Thus, in accordance with *Torsilieri II*, we are constrained to vacate the order denying Appellant's post-sentence motion and to remand for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed in accordance with *Torsilieri II*.

In conclusion, we vacate the order denying Appellant's post-sentence motion regarding the denial of his SORNA challenge and remand for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed herein. We affirm Appellant's judgment of sentence in all other respects.

Order denying post-sentence motion vacated with regard to denial of Appellant's SORNA challenge.  Judgment of sentence affirmed in all other respects.  Case remanded.  Jurisdiction relinquished.

Judge Kunselman Joins.

Judge King Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/21